IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


MELVIN HOGAN, JR.,
      Petitioner,

vs.                                Case No.:  3:12cv84/MW/EMT

ALAN PIPPEN,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's amended petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 18).  Respondent filed an answer and relevant portions of the state court record (doc. 24).  Petitioner filed a reply (doc. 34).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* doc. 24).[1]  Petitioner was charged in the Circuit Court in and for Escambia County, Florida, Case No. 2008-CF-2826, with one count of robbery without a weapon (Ex. A at 1).  He was

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 24).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

also charged in Case No. 2008-CF-2827 with one count of robbery without a weapon (*see* Ex. B at 8–10). On January, 6, 2009, Petitioner pleaded guilty "straight up" in both cases (Ex. B at 46–57; *see also* Ex. A at 11–15). The court accepted the pleas (Ex. B at 46–57). On March 13, 2009, the court adjudicated Petitioner guilty and sentenced him to concurrent terms of seven (7) years of imprisonment, with presentence jail credit of 281 days, followed by concurrent terms of eight (8) years of probation (Ex. A at 16–21, Ex. B at 58–76).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D09-1401 (Ex. A at 32). On May 11, 2009, prior to filing an initial brief, Petitioner filed a motion for reduction or modification of sentence, pursuant to Rule 3.800(c) of the Florida Rules of Criminal Procedure (Ex. H). He filed an amended motion on May 28, 2009 (*id.*). The state circuit court denied the motion (*id.*). On July 15, 2010, Petitioner filed a motion to correct sentencing error, pursuant to Rule 3.800(b)(2) of the Florida Rules of Criminal Procedure (Ex. C at 77–79). The state circuit court denied the motion (*id.* at 124–27). Petitioner's counsel filed a brief, pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967), asserting that there were no meritorious arguments to support the contention that reversible error occurred in the trial court (Ex. D). Petitioner filed a pro se initial brief (Ex. F). The First DCA affirmed the judgment per curiam without written opinion on February 17, 2011, with the mandate issuing March 15, 2011 (Ex. G, Ex. PD2). <u>Hogan v. State</u>, 54 So. 3d 493 (Fla. 1st DCA 2011) (Table). Petitioner did not seek further review.

On March 13, 2011, Petitioner filed a motion for postconviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. I at 1–14). In an order rendered July 7, 2011, the state circuit court struck the motion as facially insufficient, without prejudice to Petitioner's filing an amended motion (*id.* at 50–52). Petitioner filed an amended motion on August 23, 2011 (*id.* at 53–68). The state circuit court summarily denied it on November 16, 2011 (*id.* at 113–20). Petitioner appealed the decision to the First DCA, Case No. 1D12-1378. The First DCA affirmed the judgment per curiam without written opinion on June 20, 2012, with the mandate issuing July 17, 2012 (Ex. J). <u>Hogan v. State</u>, 91 So. 3d 137 (Fla. 1st DCA 2012) (Table).

On March 13, 2011, Petitioner also filed another motion for reduction or modification of sentence, pursuant to Rule 3.800(c) of the Florida Rules of Criminal Procedure (Ex. K). The state circuit court denied the motion on March 29, 2011 (*id.*).

On August 21, 2011, Petitioner filed a "Motion to Correct Illegal Sentence Credit for County Jail Time Served," pursuant to rule 3.800(a) of the Florida Rules of Criminal Procedure (Ex. L). The state circuit court denied the motion on November 16, 2011 (*id.*).

Petitioner filed the instant federal habeas action on February 17, 2012 (doc. 1). Respondent does not assert a statute of limitations defense (doc. 24 at 3).

II.      STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19. In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Id.</u>, 529 U.S. at 412–13 (O'Connor, J., concurring); <u>Ramdass v. Angelone</u>, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  <u>Neelley v. Nagle</u>, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* <u>Parker v. Head</u>, 244 F.3d 813, 835 (11th Cir. 2001).

---

[2] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.  Moreover, where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law.  See Henderson v. Campbell, 353 F.3d 880, 890 n. 15 (11th Cir. 2003).

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it.  Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); cf. Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court

conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'"  Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87, 178 L. Ed. 2d 624 (2011)).  The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  See Gill, supra at 1291 (citing Harrington, 131 S. Ct. at 786).  Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  See Harrington, 131 S. Ct. at 786; see also Gill, supra, at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); see e.g. Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s

"unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* Gill, 633 F.3d at 1292. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claims.

III.    PETITIONER'S CLAIMS

Ground One: "Denial of effective assistance of counsel by erroneously instructing defendant to reject the State['] thirty[-]six (36) month plea deal, and to enter a straight up plea because he only scored out to 20.2 months prison time, when there was no reason for counsel to believe the defendant would do better than 36 months, which resulted in the defendant being sentenced to fifteen (15) years instead of thirty[-]six (36) months the State offered and defendant would have accepted if not for counsel's erroneous instructions to reject plea deal. Defendant was sentenced to 5 times more than the offered prison time as a direct result to [sic] counsel's instruction."

Ground Two: "Denial of effective assistance of counsel by instructing defendant to enter a straight-up open plea to a potential thirty (30) year sentence and reject the State['] thirty-six (36) month plea deal, because defendant only scored out to 20.2 months prison time, when counsel failed to inform defendant of ANY pertinent matters bearing on as [sic] how to plea [sic] as required by the Fla. R. Crim. P., Fla. Rules of Court, and Rules regulating The Florida Bar and the U.S. Constitution guarantee of effective assistance of counsel. Counsel's above-mentioned deficient conduct caused the following: (1) the defendant to reject a three (3) year deal, which he would have accepted if not for counsel's error; and (2) opened the defendant up to a potential thirty (30) year sentence, resulting in a fifteen (15) year sentence 4 times more than the three (3) year sentence the defendant would have

received had the defendant's counsel not erroneously instructed him and informed him of the pertinent matters on how to plea [sic] based on an informed decision."

Ground Three:  "Guilty plea (straight-up, open) was unlawfully induced and not made voluntarily with the understanding of the consequences or risks of that plea, because counsel's only instructions were to enter an open plea and to reject thirty[-]six (36) month plea deal because he only scored out to 20.2 months prison time.  Defendant entered an open plea to the court, based solely on counsel's instructions which clearly implied that entering an open guilty plea, as opposed to accepting the thirty[-]six (36) months, that defendant would more than likely be sentenced to 20.2 months [sic] and counsel failed to inform defendant of the consequences of that open plea.  Counsel's deficient performance resulted in defendant being sentenced to fifteen (15) years, instead of the three (3) years he would have accepted, if not for counsel's errors and omissions.  Defendant was sentenced to 5 times more prison time than the State's plea offer as a direct result of counsel's deficient performance (instructions)."

Ground Four:  "Denial of effective assistance of counsel on Jan. 6, 2009, by providing the defendant with a copy of the signed written sentence recommendation agreement that, even after defendant questioned counsel about the document being correct, clearly contractually bound the State to recommend thirty[-]six months and failing, on March 13, 2009, at sentencing, to object to the State[']s ten (10) year sentence recommendation."

Ground Five: "Denial of effective assistance of counsel by fraud, deception, the withholding of information from the court, by the unlawful alteration of an official court document (sentence recommendation form) and later filing that unlawfully altered document with the court."

Ground Six:  "Denial of effective assistance of counsel, when after counsel erroneously instructed defendant to reject the State's thirty[-]six (36) month plea deal and enter a straight-up plea because defendant only scored out to 20.2 months prison time, which resulted in defendant receiving a fifteen (15) year sentence, therefore counsel was negligent for failing to contact defendant and inform him of, or take any action whatsoever on behalf of defendant to correct counsel's erroneous instructions including, but not limited to the withdrawing of defendant[']s plea."

Petitioner alleges that on January 5, 2009, defense counsel, Mr. Ammon, visited him at the jail and informed him that the State had offered a thirty-six (36) month sentence in exchange for his guilty plea (doc. 18 at 4).  Petitioner alleges counsel instructed him to reject the offer of a 36-month sentence recommendation, because he "scored out" to 20.2 months of imprisonment on his Criminal Punishment Code Scoresheet (*id.* at 4, 9).  He alleges counsel also instructed him to enter a "straight up" plea to the court (*id.*).  Petitioner alleges he inferred from counsel's instructions that he would

"do better" than the State's 36-month offer and would more than likely be sentenced to 20.2 months if he entered a "straight up" guilty plea (*id.*). Petitioner alleges he deferred to counsel's advice, because he was previously represented by Mr. Ammon in a misdemeanor criminal case three years prior, and his following Ammon's advice to enter a guilty plea in that case resulted in a favorable outcome (*id.* at 4). He alleges prior to counsel's instructions, he had never heard of an "open" or "straight up" plea, and counsel failed to inform him of the consequences of a "straight up" guilty plea (doc. 18 at 4; doc. 34 at 2).

Petitioner further alleges that at the plea hearing the next day, on January 6, 2009, while he and Mr. Ammon were at the podium, Mr. Ammon handed him a "sentence recommendation agreement" with the following handwritten changes: "Plea: S/Up $50 PD. + $100 C.O.D. APP. Fee reduced to a civil lien" (doc. 18 at 6). Petitioner alleges at that time, the typewritten provision stating, "ADJUDICATE GUILTY; 36 MONTHS S.P. EACH CASE TO RUN CONCURRENT WITH EACH OTHER; $518 COURT COSTS" was not crossed out (*id.* at 6, 11–14). He alleges he then signed that "agreement" (*id.*). Petitioner acknowledges he told the court during his plea colloquy that he had not received any promises regarding his sentence, but states he did so because Mr. Ammon's statements were not promises, but "instructions and representations" (*id.* at 5). Petitioner alleges that near the end of the plea hearing, the court asked him if he had questions for Mr. Ammon, and Petitioner responded he did and, off the record, asked Mr. Ammon if the written plea agreement was correct, and Ammon affirmed it was (*id.*).

Petitioner alleges that at the sentencing hearing on March 13, 2009, the prosecutor requested a minimum sentence of ten (10) years of imprisonment (doc. 18 at 7). Petitioner alleges Mr. Ammon failed to object to the recommendation on the ground that it violated the "agreement," which Petitioner alleges bound the prosecutor to recommend a sentence of 36 months (*id.*). Petitioner alleges the court sentenced him to a total of fifteen (15) years, consisting of concurrent terms of seven (7) years of imprisonment plus concurrent terms of eight (8) years of probation (*id.*).

Petitioner further alleges that upon his arrival in state prison, he obtained a record of the court proceedings and discovered Mr. Ammon had "deceptively and fraudulently" altered the "agreement" by crossing out the provision stating, "ADJUDICATE GUILTY; 36 MONTHS S.P. EACH CASE TO RUN CONCURRENT WITH EACH OTHER; $518 COURT COSTS" (doc. 18

at 8; doc. 34 at 6).  Petitioner states he never knew about or agreed to this modification (doc. 18 at 8–9).

Respondent contends Petitioner altered the factual basis for his federal claim from the claim he presented to the state courts.  For example, in state court, Petitioner did not allege the facts concerning his prior misdemeanor case to show that his reliance upon Mr. Ammon's advice was reasonable (doc. 24 at 4–5).  Therefore, he may not raise this non-exhausted factual assertion in this federal habeas proceeding (*id.*).  Additionally, in Petitioner's federal petition, he omitted a factual assertion he made in state court, and upon which the state court relied, namely, that Mr. Ammon's advice "implied that by rejecting the State's 3 year deal that I would be sentenced to 20.2 months and because of that advice that's what I believed." (*id.* at 5 (emphasis added)).  Whereas in his federal petition, he alleges counsel "instructed" him to reject the State's offer and enter a "straight up" plea (*id.*).  Respondent contends as to the factual allegations which are properly before this court, Petitioner failed to show the state court's adjudication of his challenge to his plea based upon ineffective assistance of counsel was based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of clearly established federal law (*id.* at 5–12).  Respondent emphasizes that Petitioner's allegation that he refused the State's 36-months plea offer eradicates the factual basis for his argument that the State was contractually bound to recommend a 36-month sentence (*id.* at 11–12).

        1.        Clearly Established Federal Law

"Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process."  Lafler v. Cooper, — U.S. —, 132 S. Ct. 1376, 1384, 182 L. Ed. 2d 398 (2012) (citing Missouri v. Frye, — U.S. —, 132 S. Ct. 1399, 1404, — L. Ed. 2d — (2012), and McMann v. Richardson, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)).  "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it."  Lafler, 132 S. Ct. at 1387.  The two-part test articulated in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), applies to claims that counsel was ineffective during plea negotiations.  Lafler, 132 S. Ct. at 1384 (applying Strickland's two-part test to federal habeas petitioner's claim that counsel was ineffective for advising him to reject a plea offer); Frye, 132 S. Ct. at 1404, 1409–10 (applying Strickland's two-part test to federal habeas

petitioner's claim that counsel was ineffective for failing to communicate a prosecution plea offer before it lapsed); Hill v. Lockhart, 474 U.S. 52, 48, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985) (applying Strickland's two-part test to defendant's challenge to his guilty plea based on ineffective assistance of counsel).

Strickland's first prong requires a defendant to show "'that counsel's representation fell below an objective standard of reasonableness.'" Hill, 474 U.S. at 57 (quoting Strickland, 466 U.S. at 688). The focus of inquiry under the performance prong of the Strickland standard is whether counsel's assistance was "reasonable considering all the circumstances." *See* Strickland, 466 U.S. at 691. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Indeed, the Supreme Court warned about second-guessing professional judgments made by counsel:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court. . . . Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts. That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

McMann v. Richardson, 397 U.S. 759, 769–70, 90 S. Ct. 1441, 1448, 25 L. Ed. 2d 763 (1970).

In a plea situation, counsel must provide advice "within the range of competence demanded of attorneys in criminal cases." Hill, 474 U.S. at 56–57 (quoting McMann, 397 U.S. at 771). Under this standard, representation is ineffective only if counsel commits "serious derelictions" of his duty when advising the accused. Stano v. Dugger, 921 F.2d 1125, 1150–51 (11th Cir. 1991). Absent such blatant errors, however, the court should "indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." Yordan v. Dugger, 909 F.2d 474,

477 (11th Cir. 1990). The Eleventh Circuit has commented that "[t]he right to competent plea bargain advice is at best a privilege that confers no certain benefit," because a defendant "may make a wise decision" without assistance of counsel or a "bad one despite superior advice from his lawyer." Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam). "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between [entering a plea] and going to trial." Id. This requires counsel to "offer his informed opinion as to the best course to be followed" and impart "a general knowledge of the possible legal consequences of facing trial" to the defendant. Id. Therefore, a defendant's failure to "correctly assess every relevant factor entering into his decision" does not undermine a validly entered guilty plea. Id. at 1509.

Strickland's second prong requires a defendant to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In the context of pleas, "[t]he . . . 'prejudice' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill, 474 U.S. at 59. Often this analysis hinges upon whether eradication of the error would have led counsel to change his recommendation as to the plea, which in turn generally depends on whether the outcome of a trial would have been substantively different. Id. at 59–60. While counsel can be deemed ineffective under Strickland for failing to provide proper advice during the plea process, Petitioner must demonstrate a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. See Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991); Toro v. Fairman, 940 F.2d 1065, 1068 (7th Cir. 1991). A conclusory, after-the-fact statement that Petitioner would not have pled guilty, without more, is insufficient to establish prejudice under Strickland. See Diaz, 930 F.2d at 835; see also Coulter v. Herring, 60 F.3d 1499, 1504 (11th Cir. 1995) (though Coulter evidenced, through his counteroffer to the State, a willingness to enter into a plea agreement, he offered no further proof to show that he would have accepted the State's plea offer of life without parole absent his lawyers' alleged errors; therefore, Coulter failed to establish any prejudice stemming from counsel's alleged deficient performance); Johnson v. Duckworth, 793 F.2d 898, 902 n.3 (7th Cir. 1986).

"Surmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S.356, 130 S. Ct. 1473, 1485, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult." <u>Richter</u>, 131 S. Ct. at 788. As the <u>Richter</u> Court explained:

> The standards created by <u>Strickland</u> and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.

*Id.* (citations omitted).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. <u>Strickland</u>, 466 U.S. at 698; <u>Collier v. Turpin</u>, 177 F.3d 1184, 1197 (11th Cir. 1999).

        2.        Federal Review of State Court Decision

Petitioner raised his claims in his amended Rule 3.850 motion (Ex. I at 53–68). In the state circuit court's written decision denying the claims, the court correctly cited the <u>Strickland</u> standard as applicable to Petitioner's challenges to his plea on grounds of ineffective assistance of counsel (*id.* at 114–15). The court adjudicated the claims as follows:

> In Defendant's first claim, Defendant asserts that his counsel was ineffective for advising him on January 5, 2009, to reject a 36-month plea offer. Defendant asserts that his counsel told him "that [he] was going to reject that offer because [he] only scored out to 20.2 months," and that his counsel's advice "<u>implied</u> that by rejecting the State's 3-year deal that [he] would be sentenced to 20.2 months" (emphasis added).

> Defense counsel can be ineffective in failing to properly advise the defendant of a plea offer. <u>Eristma v. State</u>, 766 So. 2d 1095 (Fla. 2d DCA 2000). A defendant is inherently prejudiced by his inability, due to his counsel's neglect, to make an informed decision whether to plea bargain. <u>Cottle v. State</u>, 733 So. 2d 963 (Fla. 1999). When the alleged ineffectiveness concerns the rejection of a plea offer, the defendant must prove: "(1) counsel failed to communicate a plea

offer or misinformed defendant concerning the penalty he faced, (2) defendant would have accepted the plea offer but for the inadequate notice, and (3) acceptance of the State's plea offer would have resulted in a lesser sentence."

Murphy v. State, 869 So. 2d 1228, 1229 (Fla. 2d DCA 2004).

Although Defendant states that his counsel "implied" he would be sentenced to 20.2 months, he fails to state that he was misinformed specifically by counsel in any way.[FN 5] Furthermore, Defendant's statements during the course of the plea colloquy the very next day belie his present allegation that he believed he would receive a sentence of 20.2 months.

[FN 5: Defendant has previously been granted leave to amend his postconviction motion to plea facially sufficient claims. See Attachment 3.]

The record reflects the following colloquy took place between the Court and Defendant while Defendant was under oath on January 6, 2009:

| | |
|---|---|
| The Court: | This is—each charge is a second—two different charges of second degree felony, maximum possible penalty on a second degree is 15 years in prison or a $10,000 fine or both. So, the maximum prison time you face would be 30 years in prison. There is no minimum mandatory sentence required. Do you understand that? |
| Defendant: | Yes, Your Honor. . . . |
| The Court: | And there is no promise being made of what sentence will be imposed. Do you understand that? |
| Defendant: | Yes, Your Honor. . . . |
| The Court: | And has Mr.—excuse me, has Mr. Ammon told you want [sic] what sentence will be imposed? |
| Defendant: | What the sentence would be? |
| The Court: | Right. |
| Defendant: | No. |

| | |
|---|---|
| The Court: | Has he told you—you understand he doesn't know what sentence will be imposed— |
| Defendant: | Yes, Your Honor, I understand. |
| The Court: | —because he will have no control over it? |
| Defendant: | Yes, Your Honor. |
| The Court: | You understand? |
| Defendant: | Yes, I do.[FN 6] |

[FN 6:  See Attachment 4, plea hearing transcript, pages 4–7.]

The record refutes Defendant's claim that he rejected the plea offer of 36 months based on a misguided belief that he would receive a sentence of 20.2 months. Based on the foregoing, Defendant is not entitled to relief on the basis of his first claim.

In his second claim, Defendant asserts that his guilty plea was involuntary because his attorney "failed to advise him on any pertinent matters bearing on that choice." Defendant fails to state specifically what matters he believes his counsel was deficient in failing to discuss. Furthermore, Defendant states at his plea colloquy that he had read the sentence recommendation, and that he understood the rights he was waiving and the potential penalties he faced.[FN 7]  Defendant is not entitled to relief on the basis of his second claim.

[FN 7:  See Attachment 4, plea hearing transcript.]

In his third claim, Defendant asserts that his counsel was ineffective for failing to object to the state's recommendation of a ten-year sentence at Defendant's sentencing hearing. Defendant asserts that his counsel's performance was deficient because the "State was contractually bound to recommend a sentence of (36) months." In his related fourth claim, Defendant asserts that his counsel was ineffective because of his "deception, fraud, withholding of information from the Court and the unlawful alteration of an official court document . . . and later filing that unlawful altered document with the Court." Defendant's factual assertion underlying both of these claims appears to be that the phrase "adjudicate guilty: 36 months S.P. each case to run concurrent with each other; $518 court costs" was crossed out on the document filed with the Court, but was not crossed out on the copy he received from his counsel. He further states that he "had no knowledge of nor consented to any such change." He raises a similar allegation in his fifth claim

that his counsel was ineffective for failing to bring to the Court's attention the "signed sentence recommendation form binding the State to recommend (36) months."[FN 8]

> [FN 8: Although Defendant states that his copy of the "unaltered" form is signed, he has failed to include the signature page for this document.]

As an initial matter, Defendant has failed to state that he would not have entered his plea were it not for these alleged errors on the part of his counsel, and has failed to show that a different result would have been had at his sentencing had the state "recommended" a sentence of 36 months. The record before the Court suggests that the State offered Defendant a plea agreement for 36 months in state prison, which he refused. Defendant acknowledges as much in his first claim for relief, stating, "After exchanging greetings Mr. Ammon informed me that the State was offering (36) months State prison. . .".[FN9] After the rejection of the 36-month plea offer, Defendant agreed to enter a plea straight-up, and attested before this Court that he understood that he was entering a plea straight up and that he understood that it was entirely within the discretion of the Court regarding the length of his sentence.[FN 10] Specifically, Defendant was asked by the Court, "The prosecutor might argue for a 30 year sentence. Do you understand that?" and Defendant replied that he did.[FN 11] Finally, at Defendant's sentencing, having heard the State's recommendation of 10 years, Defendant spoke politely, eloquently, and intelligently on his own behalf regarding this remorse, but expressed no surprise or objection to the State's recommendation of 10 years.[FN 12] The record refutes Defendant's third, fourth and fifth claims, and he is not entitled to relief on the basis of these claims.

> [FN 9: See Defendant's motion, page 8.]

> [FN 10: See Attachment 4, plea hearing transcript.]

> [FN 11: See Attachment 4, plea hearing transcript, page 6.]

> [FN 12: See Attachment 5, sentencing hearing transcript, pages 14–15.]

In his final claim, Defendant asserts that his counsel was ineffective for failing to move the Court to allow him to withdraw his plea. Defendant states simply that his attorney made no attempt to contact him regarding withdrawing his plea and did not file a motion to withdraw plea on his behalf.

First, Defendant does not assert that he informed his counsel that he wished to withdraw his plea. Secondly, Defendant has failed to state any meritorious basis of which counsel was or should have been aware which should have resulted in a motion to withdraw plea.

Lastly, a withdrawal of plea after sentencing is allowed upon a showing of "manifest injustice." "Where a motion to withdraw plea occurs after sentencing, the appellant has the burden of proving that a manifest injustice has occurred. This is a more stringent standard than a motion to withdraw a plea filed before sentencing; the burden falls on the defendant to prove that withdrawal is necessary to correct the manifest injustice." Snodgrass v. State, 837 So. 2d 507, 508 (Fla. 4th DCA 2003) (internal citations and quotations omitted). Defendant has failed to show that this standard could have been met, and thus has shown no reason why such a motion would have been granted had it been filed. He is not entitled to relief on this basis.

(*id.* at 115–19). Petitioner appealed the circuit court's denial of his Rule 3.850 motion to the First DCA, and the appellate court affirmed the lower court's decision without written opinion (Ex. J).

Initially, Petitioner does not allege counsel affirmatively represented or promised that he would receive a sentence of 20.2 months. He alleges only that counsel advised him that he "scored out" to 20.2 months, and Petitioner alleges he inferred from counsel's advice that he would "do better" than the State's 36-month offer and would more than likely be sentenced to 20.2 months if he entered a "straight up" guilty plea.[3] Further, even if Petitioner alleged counsel promised him a sentence of 20.2 months, this assertion is refuted by Petitioner's sworn statements to the court at the plea hearing. At the plea hearing, the state court explained the 20.2-month calculation as follows:

THE COURT: All right, I've been handed a sentence recommendation form that indicates to me there is no negotiated plea agreement and this would be a plea straight up, meaning a plea for the Court to decide what the sentence would be without any agreement as to what the prosecutor is going to recommend.

So, the form is not a plea agreement form, but the sentence recommendation form includes some important information as far as advising you have to [sic] rights that you give up if you plead guilty or no contest and advising you of the potential penalties in these cases.

Do [sic] you read this sentence recommendation form?

---

[3] Counsel's statement that Petitioner "scored out" to 20.2 months was accurate. Petitioner's sentence computation reflected in his Criminal Punishment Code Worksheet showed his lowest permissible prison sentence was 20.2 months (Ex. A at 7–10).

Case No.: 3:12cv84/MW/EMT

THE DEFENDANT: Yes, Your Honor.

THE COURT: And this is your signature on it?

THE DEFENDANT: Yes, it is.

. . . .

THE COURT: Did you [ ] note the potential penalties you face?

THE DEFENDANT: Yes.

THE COURT: This is—each charge is a second—two different charges of second degree felony, maximum possible penality [sic] on a second degree felony is 15 years in prison or a $10,000 fine or both. So, the maximum prison time you face would be 30 years in prison. There is no minimum sentence required. Do you understand that?

THE DEFENDANT: Yes, Your, Honor.

THE COURT: The prosecutor has prepared a criminal punishment code scoresheet that shows a total of 55 points. That comes to 20.2 months as a lowest permissible prison sentence.

Here's what that means, it's not a guideline that says that's the sentence I should impose. It's a calculation that says that if I sentence you to less than that, the only way I can do that is to find mitigating circumstances, and there has to be evidence presented to show those mitigating circumstances.

If I sentenced you to less than 20.2 months, the prosecutor can appeal the sentence and the district court would determine whether or not there was evidence presented from which I could find mitigating circumstances. If I do not find mitigating circumstances, I would sentence you to no less than 20.2 months. I could sentence you legally up to 30 years. This is not a guideline that says that's the sentence that should be imposed. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And there is no promise being made of what sentence will be imposed. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: The prosecutor might argue for a 30 year sentence. Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Your attorney could argue that I should mitigate the sentence and impose a fine and do nothing else.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  And you and your attorney will have a right to be heard about what sentence should be imposed.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

. . . .

THE COURT:  Has anyone threatened you or coerced you to get you to plead to these charges?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Anybody promised you any benefit by entering a plea?

THE DEFENDANT:  No.

THE COURT:   And has Mr.—excuse me, has Mr. Ammon told you want [sic] sentence will be imposed?

THE DEFENDANT:  What the sentence would be?

THE COURT:  Right.

THE DEFENDANT:  No.

THE COURT:  Has he told you—you understand he doesn't know what sentence will be imposed—

THE DEFENDANT:  Yes, Your Honor, I understand.

THE COURT:  —because he will have no control over it?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  You understand?

THE DEFENDANT:  Yes, I do.

(Ex. at 48–52). This record demonstrates Petitioner was clearly advised that if he entered a guilty plea, there was no guarantee of the length of sentence he would receive.

Petitioner additionally failed to show that counsel led him to believe that the State would still recommend a 36-month sentence if Petitioner entered a "straight up" plea. Petitioner acknowledges he and defense counsel discussed the State's offer (doc. 18 at 4, *see* Ex. B at 47). He also acknowledges he rejected the State's 36-month "plea deal" or "plea offer sentence" (doc. 18 at 9; doc. 34 at 5). Further, although Petitioner alleges counsel failed to inform him of the consequences of a "straight up" guilty plea, he does not allege he (Petitioner) communicated this alleged lack of understanding to counsel. Further, as demonstrated by the plea colloquy, prior to entering his plea, the trial court told Petitioner that the sentence recommendation form indicated there was no negotiated plea agreement, and Petitioner's plea would be "straight up, meaning a plea for the Court to decide what the sentence would be without any agreement as to what the prosecutor is going to recommend" (Ex. B at 48–49). Petitioner told the court under oath that: (1) he read the sentence recommendation form; (2) he understood that the court would decide his sentence without any agreement as to what the prosecutor would recommend; (3) he understood he faced a potential maximum penalty of thirty (30) years of imprisonment; (4) he understood that the 20.2-month calculation on his sentencing scoresheet was <u>not</u> the sentence the court <u>should</u> impose, but simply was the lowest permissible prison sentence the court <u>could</u> impose, unless there was evidence presented from which the court could find that mitigating circumstances warranted a lesser sentence; and (5) he understood the prosecutor may request a 30-year sentence (Ex. B at 48–51). Even if defense counsel crossed out the provision of the sentence recommendation form containing the State's original 36-month offer, after counsel discussed the offer with Petitioner and Petitioner decided to reject it, this conduct can hardly be deemed fraudulent or deceptive, since Petitioner rejected the 36-month offer and decided to enter a "straight up" plea, and he confirmed to the court that he understood his "straight up" plea to mean the court would decide his sentence without any agreement as to the sentence the prosecutor would recommend.

Moreover, Petitioner failed to show that counsel's advice to reject the State's plea offer and plead "straight up" was unreasonable. Several factors were present in Petitioner's case which formed a reasonable basis to predict that the court may sentence Petitioner to the lowest permissible

sentence of 20.2 months of imprisonment or a downward departure sentence of probation. Petitioner's criminal history included only misdemeanor offenses (*see* Ex. A at 7). He entered the military service at the age of eighteen and was honorably discharged after five years (*see* Ex. B at 68–69). Upon his discharge from the military, he experienced a contentious divorce, which caused him to turn to alcohol and crack cocaine (*id.*). Petitioner was willing to take complete responsibility for the crimes, and described his actions as "insane" (*id.*). He was very remorseful, and recognized the effects his actions had on the victims (*id.* at 69–72). Based upon these circumstances, counsel's advice to reject the State's offer and plead "straight up," was not incompetent.

Petitioner also failed to show that counsel provided ineffective assistance at the sentencing hearing. Petitioner faults counsel for failing to object to the State's recommending a 10-year sentence, on the ground that it breached the "agreement." However, as discussed *supra*, the State was relieved of its obligation to recommend a 36-month sentence when Petitioner rejected the plea offer. Therefore, counsel had no meritorious basis for objecting to the State's sentence recommendation of ten years.

Finally, Petitioner failed to show that defense counsel was ineffective for failing to advise him of the option of withdrawing his plea after sentencing. As the state court found, Petitioner failed to show he communicated to counsel a desire to withdraw his plea within the 30-day period following rendition of the judgment, which is the deadline established in the Florida Rules of Criminal Procedure.[4] *See* Fla. R. Crim. P. 3.170(l). Furthermore, Petitioner failed to allege facts showing he had a meritorious basis for seeking withdrawal of his plea. Therefore, counsel was not ineffective for failing to discuss this issue with Petitioner or filing a motion to withdraw the plea.

Petitioner failed to demonstrate that the state court's adjudication of his claims was based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of clearly established federal law. Therefore, he is not entitled to federal habeas relief.

IV.    CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant,"

---

[4] Rendition of Petitioner's sentence occured on March 13, 2009 (*see* Ex. A at 16–21).

and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That the amended petition for writ of habeas corpus (doc. 18) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this <u>3rd</u> day of April 2013.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**